Peter Anderson, Esq., Cal. Bar No. 88891
peteranderson@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, CA 90017-2566
Tel: (213) 633-6800
Fax: (213) 633-6899

Attorney for Plaintiff and Counterdefendant
AMERICAN SOCIETY OF
CINEMATOGRAPHERS

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| AMERICAN SOCIETY OF CINEMATOGRAPHERS, a California corporation,<br><br>                    Plaintiff,<br><br>     v.<br><br>HOWARD SCHATZ and BEVERLY ORNSTEIN,<br><br>                    Defendants.<br><br>HOWARD SCHATZ and BEVERLY ORNSTEIN,<br><br>                    Counterclaimants,<br><br>     v.<br><br>AMERICAN SOCIETY OF CINEMATOGRAPHERS,<br><br>                    Counterdefendant. | Case No. 2:20-cv-8607 ODW (JCx)<br><br>AMERICAN SOCIETY OF CINEMATOGRAPHER'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS<br><br>[Fed. R. Civ. P. 12(b)(6) and 12(c)]<br><br>Date: January 11, 2021<br>Time: 1:30 p.m.<br><br>Courtroom of the Honorable<br>Otis D. Wright II<br>United States District Judge |

**TABLE OF CONTENTS**

Page

1. SUMMARY OF REPLY ................................................................................1
2. DEFENDANTS ALLEGE A TEXTBOOK FAIR USE ..................................1
   (a) Defendants' Counterclaim Alleges a Non-Infringing Fair Use .............1
       (1) The Alleged Use Is Among § 107's Examples of Fair Use.........1
       (2) The Four § 107 Factors Cut in Favor of Fair Use.......................2
           (i) The Purpose and Character of the Use: Non-Profit Criticism and Comment......................................................2
               a. The Use Is Non-Profit ..............................................2
               b. The Use Is Highly Transformative...........................5
           (ii) The Nature of the Copyrighted Work: a Published Photograph Strictly Limited to the Pilobolus Pose............7
           (iii) The Amount and Substantiality of the Use........................8
               a. The Use Is Limited to Explaining the Review's Discussion of Pilobolus' Unique Approach to Dance.........................................................................8
               b. The Photograph as a Whole is the Pilobolus Pose that Defendants Concede Schatz Did Not Create.......................................................................9
           (iv) The Use's Effect on the Market for or Value of the Photograph: No Harm Is Alleged and None Is Plausible...........................................................................10
           (v) Taken Together, the Factors Confirm Fair Use ...............11
   (b) Granting Defendants Leave to Amend Would Be Futile .....................11
3. JUDGMENT ON THE PLEADINGS ............................................................11
   (a) The Pleadings Establish that the Review's Inclusion of the Photograph Is a Fair Use ......................................................................11
   (b) Defendants' Request for Judgment on the Pleadings Is Frivolous ......12
4. CONCLUSION................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009) ................................................................................................ 3

*Associated Music Publishers v. Debs Mem'l Radio Fund*,
　46 F. Supp. 829 (S.D.N.Y. 1942), *aff'd*, 141 F.2d 852 (2d Cir.
　1944) ................................................................................................................. 3, 4

*Barcroft Media, Ltd. v. Coed Media Grp., LLC*,
　297 F. Supp. 3d 339 (S.D.N.Y. 2017) .................................................................... 6

*Bell Atlantic Corp. v. Twombly*,
　550 U.S. 544 (2007) ................................................................................................ 1

*Blanch v. Koons*,
　467 F.3d 244 (2d Cir. 2006) ................................................................................... 8

*Campbell v. Acuff-Rose Music, Inc.*,
　510 U.S. 569 (1994) ............................................................................................ 5, 6

*Cariou v. Prince*,
　714 F.3d 694 (2d Cir. 2013) ................................................................................... 6

*Eminence Capital, LLC v. Aspeon, Inc.*,
　316 F.3d 1048 (9th Cir. 2003) ............................................................................. 11

*Feist Publns., Inc. v. Rural Tel. Serv. Co.*,
　499 U.S. 340 (1991) .......................................................................................... 7, 10

*Ferdman v. CBS Interactive Inc.*,
　342 F. Supp. 3d 515 (S.D.N.Y. 2018) .................................................................... 6

*Katz v. Google Inc.*,
　802 F.3d 1178 (11th Cir. 2015) .......................................................................... 7, 8

*Kelly v. Arriba Soft Corp.*,
　336 F.3d 811 (9th Cir. 2003) ............................................................................. 6, 8

*Mills Music, Inc. v. State of Arizona*,
  No. 73-365 PHX (WEC), 1975 WL 21095 (D. Ariz. July 23, 1975),
  *aff'd* 591 F.2d 1278 (9th Cir. 1979) ................................................................. 3, 4

*Nunez v. Caribbean Int'l News Corp.*,
  235 F.3d 18 (1st Cir. 2000) ............................................................................. 8, 11

*Otto v. Hearst Commc'ns, Inc.*,
  345 F. Supp. 3d 412 (S.D.N.Y. 2018) ................................................................... 6

*Perfect 10, Inc. v. Amazon.com, Inc.*,
  508 F.3d 1146 (9th Cir. 2007) .............................................................................. 8

*Rentmeester v. Nike, Inc.*,
  883 F.3d 1111 (9th Cir. 2018) .............................................................................. 7

*Sams v. Yahoo! Inc.*,
  713 F.3d 1175 (9th Cir. 2013) .............................................................................. 1

*Seltzer v. Green Day, Inc.*,
  725 F.3d 1170 (9th Cir. 2013) ..................................................................... 4, 6, 8

*SOFA Entm't, Inc. v. Dodger Prods., Inc.*,
  709 F.3d 1273 (9th Cir. 2013) ......................................................................... 7, 11

*Tresóna Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*,
  953 F.3d 638 (9th Cir. 2020) ........................................................... 4, 5, 6, 7, 8, 9

*United States v. Corinthian Colleges*,
  655 F.3d 984 (9th Cir. 2011) ............................................................................. 11

*WP Media USA, Inc. v. Gossip Cop Media, Inc.*,
  196 F. Supp. 3d 395 (S.D.N.Y. 2016) ................................................................... 6

**Statutes**

17 U.S.C.
  § 106(3) ................................................................................................................. 8
  § 107 ........................................................................................................ 1, 2, 3, 11
  § 107(1) ................................................................................................................. 2
  § 107(2) ................................................................................................................. 7
  § 107(3) ......................................................................................................... 8, 9, 10
  § 107(4) ............................................................................................................... 10

Copyright Act of 1909, 17 U.S.C. §§ 1 *et seq.*(repealed) ...................................... 1, 3

Copyright Act of 1976, 17 U.S.C. § 101 *et seq.* ........................................................ 3

26 U.S.C. § 501(c)(3) ................................................................................................. 3

**Rules**

Federal Rule of Civil Procedure
    12(c) ..................................................................................................... 11
    12(b)(6) ............................................................................................ 1, 11

Local Rule 11-5.2 ....................................................................................................... 2

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES**

## 1. SUMMARY OF REPLY

The ASC respectfully submits that Defendants have failed to rebut the ASC's Motion for dismissal of their counterclaim for copyright infringement. Defendants' own allegations establish fair use as a matter of law and, in an attempt to avoid that conclusion, Defendants ignore recent Ninth Circuit decisions cited in the ASC's moving papers and instead rely on cases under the repealed Copyright Act of 1909, 17 U.S.C. Sections 1 *et seq.*, as well as out-of-Circuit district court decisions that directly conflict with Ninth Circuit law. The actual governing law confirms that rather than pleading a counterclaim for infringement, Defendants plead fair use. They do not even try to suggest how they could amend to save their counterclaim, nor can they avoid the facts they pleaded establishing fair use. So amending would be futile.

Defendants' counterclaim should be dismissed without leave to amend and, with the pleadings closed, the ASC's Motion for judgment on the pleadings should be granted and a judgment of non-infringement entered.

## 2. DEFENDANTS ALLEGE A TEXTBOOK FAIR USE

### (a) Defendants' Counterclaim Alleges a Non-Infringing Fair Use

Defendants argue that their counterclaim survives a Rule 12(b)(6) Motion because they allege the elements of a prima facie claim. Defs' Oppn. (Doc. 27) at 6-8. But "a formulaic recitation of the elements of a cause of action will not do" (*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) and dismissal is proper when, as here, the pleading's factual allegations negate a plausible claim (*Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013)); ASC Memo (Doc. 26-1) at 7-9.

#### (1) The Alleged Use Is Among § 107's Examples of Fair Use

In its Motion, the ASC raised that Defendants' counterclaim specifically alleges that the photograph is included in the Pilobolus review for archetypical fair use purposes listed in 17 U.S.C. Section 107's preamble, such as comment and criticism. ASC Memo. at 9-10. For example, Defendants allege the photograph is

included in an ASC member's "review of Pilobolus," "an internationally renowned dance company," the review "include[s the dance company's] formation, history, and unique approach to dance, and critical review and commentary about Pilobolus," and the photograph was included in the review "to explain . . . visually [and] illustrate" the review's discussion of Pilobolus' "unique approach to dance, . . . ." Answer & Counterclaim at 8, ¶¶ 30-31. Remarkably, Defendants fail to even address this point.

### (2) The Four § 107 Factors Cut in Favor of Fair Use

The ASC also showed that Defendants' allegations establish that Section 107's four factors cut in favor of fair use. Defendants fail to rebut that showing.

#### (i) The Purpose and Character of the Use: Non-Profit Criticism and Comment

##### a. The Use Is Non-Profit

The first fair use factor is "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes . . . ." 17 U.S.C. § 107(1). Defendants concede the ASC is "a 'non-profit' entity" (*see, e.g.,* Defs' Oppn. at 9:26-27) and embrace the ASC's request for judicial notice that it is a non-profit Section 501(c)(3) organization (ASC Req. (Doc. 26-2) at 1:2-5; Defs' Oppn. at 2 n.2 (facts drawn from counterclaim "as well as the parties' requests for judicial notice.")). Defendants nevertheless argue that the review should be treated as a commercial use. But they are wrong as a matter of fact and law.

Defendants assert that "[t]he bottom of" the review "contained an advertisement for" the ASC's *American Cinematographer* magazine. *Id.* at 10:16-19. But they attach to their counterclaim a copy of the review as posted on the ASC's website, confirming that the review is followed by a link to subscribe to the members' articles, and then by reader comments, and only then by links to subscribe to the magazine. Answer & Counterclaim, Exhibit B at 8-9.[1] There are no advertisements

---

[1] Defendants failed to number the pages of their Exhibits as required by L.R. 11-5.2, so the ASC cites to the page of Defendants' PDF of Exhibits (Doc. 21-1).

2

in or directly associated with the review. Neither is there any charge to read the review and other articles posted by the ASC's members.

Defendants argue that because a prominent ASC member wrote the review, the ASC must have intended to draw attention to the website. Defs' Oppn. at 10:28-11:6. But Defendants allege that the ASC's membership is limited to "professional film cinematographers and special effects supervisors" (Answer & Counterclaim at 7, ¶ 18), so by definition all are prominent in their field. Nor is there any allegation that the ASC selects or limits which members may post on the website. Also, it makes no sense that a use would be a fair use only if by someone obscure or unsuccessful. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("Determining whether a complaint states a plausible claim . . . requires the reviewing court to draw on its . . . common sense.").

Defendants try to make much of the fact that the review was among posts on the ASC's www.ascmag.com website, which Defendants argue "is geared toward promoting the ASC's magazine, *American Cinematographer*" and includes on its homepage paid advertisements placed by third parties. Defs' Oppn. at 3:12-19, 10:16:21-24, 11:7-14. However, Defendants' allegations and Exhibits confirm that neither the Pilobolus review nor the photograph appeared in *American Cinematographer*, on the website's homepage, or with any paid advertisements.

Further, Defendants rely on stale case law with no precedential value to argue that a non-profit organization's fund-raising activities make it a commercial, for-profit enterprise. *Id.* at 16:8-18 (citing *Mills Music, Inc. v. State of Arizona*, No. 73-365 PHX (WEC), 1975 WL 21095 (D. Ariz. July 23, 1975), *aff'd* 591 F.2d 1278 (9th Cir. 1979) and *Associated Music Publishers v. Debs Mem'l Radio Fund*, 46 F. Supp. 829 (S.D.N.Y. 1942), *aff'd*, 141 F.2d 852 (2d Cir. 1944)). Both cases predate the January 1, 1978, effective date of the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*, and arose under the repealed Copyright Act of 1909, which did not have a codified fair use defense and, of course, did not apply the current Copyright Act's Section 107. ///

Also, the two cases Defendants cite are easily distinguished. In *Mills Music*, the defendants prepared sound recordings of unauthorized versions of the plaintiff's copyrighted musical composition and provided them to radio and televisions stations for 3,928 broadcasts as "an integral part of commercial and television advertisements promoting the[ir State] Fair and inducing members of the public to attend." *Mills Music*, 1975 WL 21095, at *20. Here, the review was not used as an advertisement and was not publicly distributed. In *Associated Music*, the defendant's "sole business" was owning and operating a radio station that included commercial advertisements and programs, and the defendant broadcasted a sound recording of the plaintiff's musical composition. *Associated Music*, 46 F. Supp. at 829-30. Here, the review did not appear in *American Cinematographer*, and Defendants establish that the ASC's activities extend beyond the magazine. Defs' Oppn. at 3:2-11.

Turning to case law under the correct Copyright Act, courts distinguish between non-profit use and uses "of a traditional commercial nature," such as selling copies to the public. *Tresóna Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*, 953 F.3d 638, 649 n.5 (9th Cir. 2020) (gathering cases). Defendants allege that the Pilobolus review was posted on the ASC's website, not that copies were sold to the public. Neither is there any charge for viewing posts on the websites. As a result, the review and its inclusion of the photograph is non-profit, pure and simple.

Defendants argue that "the ASC may not be seeking to earn 'profits' in the capitalistic sense," but the review's inclusion of the photograph "enhanc[ed] the content on www.ascmag.com in the hopes of driving visitors to the website, boosting the promotion of the *American Cinematographer* publication, and increasing revenue into the ASC's coffers." Defs' Oppn. at 11:7-14. Defendants' speculation that a member's posting has an attenuated influence on subscriptions is not plausible and, even if assumed true for the purpose of the ASC's Motion, would render the review "only incidentally commercial," and the first factor would still weigh in the ASC's favor. *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1178 (9th Cir. 2013).

4

Resorting to hyperbole, Defendants argue that fair use here would insulate all non-profit organizations from copyright liability and Goodwill "could fill its stores with pirated merchandise . . . ." Defs' Oppn. at 11:17-22. Fair use is case-specific, and Defendants allege that the ASC, rather than rampant copying, simply has a website on which one of its members posted a review that includes the photograph to explain the review's commentary. Nor is there merit to the argument that the review is unrelated to the ASC's purpose of advancing its members' interests. *Id.* at 11:23-28. The ASC's purposes are advanced by providing its members a forum where they may post regarding matters of interest to them. Also, cinematography is the art of capturing performances of all types, so it is no surprise that cinematographers are interested in other artists, including an "internationally renowned dance company" with a unique approach to its performances. Answer & Counterclaim at 6, ¶ 12.

### b. The Use Is Highly Transformative

The first fair use factor also considers whether the new work "adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message; it asks, in other words, whether and to what extent the new work is 'transformative.'" *Tresóna*, 953 F.3d at 649 (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994)).

In its Motion, the ASC raised that Defendants allege the "new work" – namely the review with the photograph included – adds extensive "new expression, meaning, or message" beyond that in the photograph alone. ASC Memo. at 12:25-13:13. The review's new expression, meaning, and message is apparent from the copy of the review that Defendants attach to their pleading. *Id.* at 13:13-15. Ignoring the import of their own allegations, Defendants mischaracterize the law.

Defendants cite four out-of-circuit district court decisions for the proposition that the use of a photograph is only transformative if the new work comments on the photograph. Defs' Oppn. at 12:17-23. That is not the law in this Circuit. Instead, "[w]orks are transformative when 'new expressive content or message is apparent,'

5

even if 'the allegedly infringing work . . . fails to comment on the original.'" *Tresóna*, 953 F.3d at 649 (quoting *Seltzer*, 725 F.3d at 1177) (emphasis added).²

Defendants also miss the mark when they suggest that *Seltzer* found the use of the plaintiff's drawing transformative because a red cross was added. Defs' Oppn. at 13:8-12. Instead, *Seltzer* focused on the new work – a video backdrop with extensive new elements (725 F.3d at 1174, 1177) – and confirmed it was transformative even though it "ma[de] few physical changes to the original . . . ." *Id.* at 1177. Since a new work may be transformative with few or even no changes to the original (*Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 820 (9th Cir. 2003) (use of exact copies of photographs transformative)), it does Defendants no good to cite *Cariou v. Prince*, 714 F.3d 694 (2d Cir. 2013), where many changes were made.

Finally, Defendants argue the review did not add "new expressive content, meaning [and] message *to the Pilobolus Photograph*." Defs' Oppn. at 14:3-4 (emphasis in original). Defendants aim at the wrong target: the issue is "whether . . . the new work is 'transformative'" with "new expression, meaning, or message . . . ." *Tresóna*, 953 F.3d at 649 (quoting *Campbell*, 510 U.S. at 579). Defendants' own allegations establish that the review is transformative. ASC Memo. at 12:25-13:15.

---

² While this Circuit's law trumps the four cases that Defendants cite, those cases also are easily distinguished. In *Barcroft Media, Ltd. v. Coed Media Grp., LLC*, 297 F. Supp. 3d 339 (S.D.N.Y. 2017), the plaintiff's paparazzi photographs were taken for licensing to gossip websites and defendants posted them on their gossip websites. *Id.* at 347, 352. Defendants do not contend that defendant Schatz took the photograph of Pilobolus for use in reviews about Pilobolus. *WP Media USA, Inc. v. Gossip Cop Media, Inc.*, 196 F. Supp. 3d 395 (S.D.N.Y. 2016) was previously cited by Defendants and is discussed in the ASC's Memorandum at 14:4-15:3. In *Otto v. Hearst Commc'ns, Inc.*, 345 F. Supp. 3d 412 (S.D.N.Y. 2018), the defendant posted a photograph taken by a wedding guest, "without adding new information, new aesthetics, new insights and understandings to the image." *Id.* at 428 (internal quotations and citation omitted). Here, Defendants allege the review includes new expression, meaning, and message. Finally, in *Ferdman v. CBS Interactive Inc.*, 342 F. Supp. 3d 515 (S.D.N.Y. 2018), the photographer took photographs on a movie set to license for use in articles about the movie. *Id.* at 521, 534. Again, there is no claim the Pilobolus photograph was taken for use in reviews about Pilobolus.

6

          **(ii)    The Nature of the Copyrighted Work: a Published Photograph Strictly Limited to the Pilobolus Pose**

The second fair use factor is "the nature of the copyrighted work . . . ." 17 U.S.C. § 107(2). In its Motion, the ASC raised that Exhibit A to Defendants' counterclaim establishes that the photograph is just a straight-on and from-the-front photograph of the Pilobolus dancers in pose, with no background, foreground, props, or other elements. As such, the photograph "conveys mainly factual information," namely, what a Pilobolus pose is. *SOFA Entm't, Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1279 (9th Cir. 2013). Accordingly, the photograph is more "informational [than] creative." ASC Memo. at 15:10-16:5 (quoting *Tresóna*, 953 F.3d at 650.). In their Opposition, Defendants do not even mention *Tresóna* or *SOFA*.

     Instead, Defendants recite that the potential creative elements of a photograph are "selecting and arranging the photo's elements" and "aspects like 'lighting, camera angle, depth of field, and selection of foreground and background elements.'" Defs' Oppn. at 14:25-15:1 (quoting *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1120, 1121 (9th Cir. 2018)). Yet Defendants then concede that none of those elements appear in the photograph; instead they identify defendant Schatz's contributions as deciding <u>not</u> to include a background and "utilizing a subdued color pallet . . . ." Defs' Oppn. at 15:16-18.[3] Their concession that he added little to the Pilobolus pose confirms that the photograph "conveys mainly factual information." *SOFA*, 709 F.3d at 1279.

---

[3] Even those claimed contributions are suspect. Copyright adheres in "elements of the work that are original," not the absence of creative elements. *Feist Publns., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). If not including a background were protected by copyright then a recording not including any sounds would be too. Also, since the photograph is not a painting Defendants' reference to a "subdued color pallet" is puzzling at best. Nor does the allegation that defendant Schatz is a professional photographer (Defs' Oppn. at at 15:14-15) change that this particular photograph is more "informational [than] creative." *Tresóna*, 953 F.3d at 650; *see, also Katz v. Google Inc.*, 802 F.3d 1178, 1183 (11th Cir. 2015) (photograph "primarily a factual work" where photographer took photograph of man without influencing his "pose, expression, or clothing").

7

Defendants also admit that the photograph is a published work rather than an unpublished work. But they argue it is an open issue whether being a published work makes fair use more likely. Defs' Oppn. at 15:20-27. Defendants simply turn a blind eye to the ASC's showing that it is established law that "[p]ublished works are more likely to qualify as fair use because the first appearance of the artist's expression has already occurred." ASC Memo. at 16:17-19 (quoting *Seltzer*, 725 F.3d at 1178).

Defendants also argue that a work's status as published or unpublished is relevant only to literary works, and "photographs [and] melodies" are different because literary works "are often considered only once." Defs' Oppn. at 15:28-16:10. That is nonsense. A work's prior publication is important because the defendant's use did not usurp the right to control first publication. *Kelly*, 336 F.3d at 820. The Copyright Act confers that right on all copyright owners, no matter the type of work. 17 U.S.C. § 106(3). As a result, courts have repeatedly applied to photographs the principle that a work's prior publication cuts in favor of fair use. *See, e.g., Kelly*, 336 F.3d at 820; *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1167 (9th Cir. 2007); *see, also Katz*, 802 F.3d at 1183; *Blanch v. Koons*, 467 F.3d 244, 256 (2d Cir. 2006); *Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 24 (1st Cir. 2000) (plaintiff's photographs had been published by another before defendant's use).

The photograph was previously published and is more informational than creative. Accordingly, the second factor cuts in favor of fair use.

### (iii) The Amount and Substantiality of the Use
#### a. The Use Is Limited to Explaining the Review's Discussion of Pilobolus' Unique Approach to Dance

The third fair use factor is the "the amount and substantiality of the portion used in relation to the copyrighted work as a whole . . . ." 17 U.S.C. § 107(3). This factor considers whether the amount and substantiality of the portion used "[is] reasonable in relation to the purpose of the copying." *Tresóna*, 953 F.3d at 650.

1         In its Motion, the ASC showed that Defendants allege the review includes the
2 photograph for the purpose of "explaining . . . visually" the review's discussion of
3 the Pilobolus dance group's "unique approach to dance" of "combining bodies."
4 ASC Memo. at 17:23-26 (quoting Answer & Counterclaim at 8, ¶ 31). The ASC also
5 demonstrated that including only a portion of the photograph would not achieve that
6 purpose. ASC Memo. at 17:26-18:16. Defendants concede that point. The ASC also
7 cited cases confirming that including the entire photograph is reasonable. *Id.* at
8 18:17-19:3. Defendants ignore those cases.

9         Instead, Defendants argue it was not "necessary" to use their photograph rather
10 than another photographer's photograph of a Pilobolus pose, and that the review's
11 author must have thought this photograph "was superior" to others. Defs' Oppn. at
12 17:20-18:4. However, the use of an entire work need only be "reasonable in relation
13 to the purpose of the copying." *Tresóna*, 953 F.3d at 650. Further, Defendants'
14 Exhibit A establishes that the photograph is a straight-on frontal view of the Pilobolus
15 dancers in pose. That makes it reasonable to include this particular photograph to
16 achieve the review's purpose of explaining Pilobolus' unique approach to dance.[4]

17         **b.**     **The Photograph as a Whole is the Pilobolus Pose**
18                  **that Defendants Concede Schatz Did Not Create**

19         In its Motion, the ASC also raised that any creative contribution by defendant
20 Schatz in taking the photograph is small and insubstantial "in relation to the work as
21 a whole." 17 U.S.C. § 107(3). That is so because the only thing depicted in the
22 photograph is the Pilobolus dancers in pose, which defendant Schatz did not create.
23 ASC Memo. at 19:6-20:7. Defendants do not dispute that the photograph by and
24 large just depicts the Pilobolus pose, and they confirm they do "not lay claim" to it.

---

[4]     Defendants claim the photograph is on the ASC's server (Defs' Oppn. at 5 n.2) but they refer to an image on a third party's server that is not viewable on the ASC's websites. To access the photograph one would need its location on the third party's server, which is what Defendants provide. Carreon Decln. (Doc. 27-1) at 3, ¶ 15.

9

1 Defs' Oppn. at 18:19-20. Instead, they argue that the pose is not protected by
2 copyright. *Id.* at 19:4-20:14. But Section 107(3) refers to the "copyrightable work
3 as a whole," not the copyrightable portions of the work. Defendants cite no case
4 holding or even implying that limitation in Section 107(3).

5 Further, a copyrighted work and the copyrightable portions of it are two
6 different things. *Feist*, 499 U.S. at 348 ("[T]hat a work is copyrighted does not mean
7 that every element of the work may be protected."). Defendants allege that the work
8 in which they registered copyright is the "photograph of four dancers intertwined . . .
9 ." Answer & Counterclaim at 6-7, ¶¶ 13-14, 16. The photograph is the "copyrighted
10 work" and defendant Schatz's contribution to it is small and insubstantial "in relation
11 to the copyrighted work as a whole." 17 U.S.C. § 107(3).

12 Defendants' allegations and Exhibits establish that it was reasonable to include
13 the entire photograph to accomplish the purpose that Defendants allege, and any
14 creative contribution by defendant Schatz is a small and insubstantial portion of the
15 photograph as a whole. Accordingly, the third factor cuts in favor of fair use.

16         **(iv)**    **The Use's Effect on the Market for or Value of the**
17                     **Photograph: No Harm Is Alleged and None Is Plausible**

18 The fourth fair use factor is "the effect of the use upon the potential market for
19 or value of the copyrighted work." 17 U.S.C. § 107(4). The ASC showed that
20 Defendants do not allege any harm to the potential market for or value of the
21 photograph, and that any such harm is undercut by their own allegations establishing
22 that the ASC did not sell copies of the photograph; that the review was posted eleven
23 years ago on a website narrowly directed to professional cinematographers and
24 special effects supervisors; that Defendants were not even aware of the website or the
25 review; and that the photograph included in the review is not a substitute for quality
26 copies Defendants sell or license. ASC Memo. at 20:20-21:15.

27 Defendants do not dispute any of the foregoing. Rather, they argue that the
28 review's inclusion of the photograph is "editorial in nature" and that a finding of fair

use would deprive them of fees for licensing the use of the photograph "in an editorial context . . . ." Defs' Oppn. at 21:22-22:16. But "editorial" broadly covers non-advertising uses, including, for example, in newspapers sold to the public for profit. *See, e.g., Nunez*, 235 F.3d at 23. Confirmation that the fair use doctrine applies here to a non-profit use directed to a narrow audience for archetypal fair use purposes would not authorize, for example, for-profit uses directed to the public at large.

The "use of the [photograph] advances [the review's] own original creation without any reasonable threat to [Defendants'] business model." *SOFA Entm't*, 709 F.3d at 1280. Accordingly, the fourth fair use factor also cuts in favor of fair use.

      **(v)    Taken Together, the Factors Confirm Fair Use**

Defendants fail to rebut the ASC's showing that applying the preamble of Section 107 and its four factors to Defendants' own allegations establishes that Defendants have pleaded a non-infringing fair use.

    **(b)    Granting Defendants Leave to Amend Would Be Futile**

Defendants request leave to amend but noticeably fail to suggest a single fact they could allege to avoid the fair use doctrine. Defs' Oppn. at 22:23-23:3. The only omitted allegation they mention anywhere in their Opposition is that they did not plead damages (*id.* at 21:15-21), but their own allegations negate their claim of damage to the market for or value of the photograph. *See above* at 10:18-26.

Further, Defendants cannot amend to contradict their allegations establishing fair use. *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011). As a result, "it is clear . . . that the [counterclaim] could not be saved by amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

**3.    JUDGMENT ON THE PLEADINGS**

    **(a)    The Pleadings Establish that the Review's Inclusion of the Photograph Is a Fair Use**

The ASC raised that a Rule 12(c) motion for judgment on the pleadings may be joined with a Rule 12(b)(6) motion to dismiss and, if the motion to dismiss is

granted and the pleadings are then closed, the motion for judgment on the pleadings may be granted. ASC Memo. at 22:26-23:5. Defendants do not disagree, but they argue that the pleadings are not closed because the ASC has not answered the counterclaim. Defs' Oppn. at 23:5-24:16. However, no answer will be required if the Motion to dismiss the counterclaim is granted without leave to amend. ASC Notice of Motion (Doc. 26) at 2:17-3:2.

**(b)** **Defendants' Request for Judgment on the Pleadings Is Frivolous**

Defendants request judgment on the pleadings in their favor. Defs' Oppn. at 24:17-25:11. Yet Defendants spend a page and a half arguing that judgment on the pleadings cannot be granted if the pleadings are not closed. *Id.* at 23:5-24:16. And if the Court were to deny the ASC's Motion to dismiss then the pleadings would still be open because the ASC has not answered the counterclaim. In short, Defendants' Opposition explains why they cannot possibly obtain the judgment on the pleadings they request.

## 4. CONCLUSION

Defendants' own allegations in their counterclaim for copyright infringement establish that the fair use doctrine applies, and Defendants' Opposition ignores binding Ninth Circuit case law. The ASC respectfully submits that its Motion to dismiss Defendants' counterclaim should be granted and, with the pleadings closed, the ASC's Motion for judgment on the pleadings should be granted and judgment entered declaring that the Pilobolus review's inclusion of the photograph is a fair use.

Respectfully submitted,

Dated: December 28, 2020

/s/ Peter Anderson
Peter Anderson, Esq.
DAVIS WRIGHT TREMAINE LLP
Attorneys for Plaintiff and Counterdefendant
AMERICAN SOCIETY OF CINEMATOGRAPHERS